



RECEIVED

OCT 2 3 2012

CLERK OF DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CRIMINAL NO. 4:12-cr-143 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | INDICTMENT |
| | ) | T. 18 U.S.C. § 2 |
| LAFAYETTE JAMES TWYNER, JR., | ) | T. 18 U.S.C. § 1347 |
| | ) | T. 21 U.S.C. § 841(a)(1) |
| Defendant. | ) | T. 21 U.S.C. § 841(b)(1)(C) |
| | ) | T. 21 U.S.C. § 841(b)(1)(E) |

## INDICTMENT

**THE GRAND JURY CHARGES:**

### INTRODUCTORY ALLEGATIONS

At all times material to this Indictment:

1. Defendant LAFAYETTE JAMES TWYNER, JR., was a family practice physician, licensed in Iowa.

2. Defendant LAFAYETTE JAMES TWYNER, JR., was employed as a physician by Urgent Care of Newton, P.C., an Iowa corporation, and at times served as its president, and was employed by Dr. Angel Martin.

3. Federal law prohibits the unlawful distribution and dispensing of various listed drugs, or "controlled substances," that are prescribed by physicians and other licensed health care providers.

4. This comprehensive, closed federal regulatory regime is administered by the United States Drug Enforcement Administration (DEA). This system criminalizes the unauthorized manufacture,

distribution, dispensing, and possession of substances classified in any of its five schedules.

5. The schedules classify substances in a hierarchical system, based on their potential for abuse and dependence, their accepted medical use, and their accepted safety for use under medical supervision. Drugs are assigned to different schedule levels according to whether they meet the characteristics established for each level. Federal law classifies controlled substances into five (5) levels known as Schedule I, II, III, IV, or V drugs. Schedule I contains the most dangerous, addicting, and restricted drugs, and Schedule V the least.

6. The drug characteristics for the five (5) levels are as follows:

- Schedule I – (1) The drug or other substance has a high potential for abuse; (2) the drug or other substance has no currently accepted medical use in treatment in the United States; and (3) there is a lack of accepted safety for use of the drug or other substance under medical supervision.

- Schedule II – (1) The drug or other substance has a high potential for abuse; (2) the drug or other substance has a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions; and (3) abuse of the drug or other substances may lead to severe psychological or physical dependence. Examples of Schedule II drugs include Oxycodone, Oxycontin and Percocet.

- Schedule III – (1) The drug or other substance has a potential for abuse less than the drugs or other substances in Schedules I and II; (2) the drug or other substance has a currently accepted medical use in treatment in the United States; and (3) abuse of the drug or other substance may lead to moderate or low physical dependence or high psychological dependence. Examples of Schedule III drugs include Hydrocodone, Vicodin and Xodol.

- Schedule IV – (1) The drug or other substance has a low potential for abuse relative to the drugs or other substances in Schedule III; (2) the drug or other substance has a currently accepted medical use in treatment in the United States; and (3) abuse of the drug or other substance may lead to limited physical dependence or psychological dependence relative to the drugs or other substances in Schedule III.

- Schedule V – (1) The drug or other substance has a low potential for abuse relative to the drugs or other substances in schedule IV, (2) the drug or other substance has a currently accepted medical use in treatment in the United States, and (3) abuse of the drug or other substance may lead to limited physical dependence or psychological dependence relative to

the drugs or other substances in Schedule IV.

7. The distribution and possession of Schedule I drugs are illegal under federal law. Schedule II through V drugs are legal drugs and considered powerful substances such that the distribution of all levels is monitored by the DEA.

8. Licensed health care providers may prescribe, dispense and administer controlled substances if they are approved by the DEA to do so, are given a DEA registration number, and comply with all DEA regulations, other applicable federal regulations, and state laws/authorities. Federal law further provides that licensed health care professionals may only issue a prescription for a controlled substance if they are doing so in the usual course of their professional practices and for a legitimate medical purpose. Therefore, health care providers who prescribe controlled drugs outside the course of usual medical practice and not for a legitimate medical purpose are violating federal law and illegally distributing controlled substances.

9. A prescription is not for a legitimate purpose or within the bounds of accepted medical practice if the health care provider issuing the prescription knows that the person to whom it is issued is abusing or diverting the controlled substance. Diversion of a controlled substance means to use a controlled substance for other than its intended prescribed purpose.

10. A prescription for a controlled substance is illegal when the provider issues the prescription knowing that the person to whom it is issued is abusing or diverting the controlled substance. Drug abuse includes intentional overuse of a controlled substance and taking a controlled substance for a purpose other than that for a legitimate medical purpose.

11. To prevent addiction to controlled substances, or abuse and diversion of them, health care providers look for warning signs, or "red flags," that indicate a patient may be abusing or

diverting controlled substances.  Common warning sign or "red flags" for addiction, abuse, or diversion, include:

(a) requests for early refills of prescriptions for controlled substances;

(b) patient requests for specific controlled substances;

(c) claims that specific controlled substances do not help pain;

(d) a reluctance to change medications;

(e) drug tests showing the presence of controlled substances the provider did not prescribe or in amounts higher than prescribed, the presence of illegal drugs, or the failure to show controlled substances prescribed or in the amounts prescribed;

(f) patient claims that prescribed controlled substances were lost, stolen, or destroyed;

(g) tips from other persons, including health care professionals, family members or friends, or anonymous people, that patients are addicted to, abusing, or diverting controlled substances;

(h) patients obtaining controlled substances from multiple providers;

(i) patients using more than one pharmacy to fill prescriptions;

(j) patient history of addiction to, abuse of, or diversion of, controlled substances; and

(k) physical signs, including withdrawal symptoms (restlessness, anxiety, mood, changes, muscle soreness, irritability, high blood pressure, high heart rate, and more).

12. One method physicians use to monitor the use of controlled substances by their patients is a pain management agreement, which outlines the conditions under which the physician agrees to provide the patient with controlled substances, and the conditions the patient agrees to follow, and explains that the physician can or will deny future prescriptions for controlled substances if the patient violates the terms of the agreement.  Physicians can also access the State of Iowa's prescription monitoring program (PMP) database, which is a health care tool for practitioners to

assist in identifying potential diversion, misuse, or abuse of controlled substances by their patients while facilitating the most appropriate and effective medical use of those substances.

    13. Defendant LAFAYETTE JAMES TWYNER, JR., distributed and dispensed controlled substances to patients not for a legitimate medical purpose and outside the bounds of professional practice by engaging in the following practices, among others:

    (a)  failing to conduct adequate medical evaluations, such as performing routine physical examinations, obtaining thorough medical histories and histories of prior drug abuse or addiction, or requiring diagnostic testing;

    (b)  failing to treat the causes of patients' alleged pain, and treating only the pain;

    (c)  prescribing controlled substances in a manner that was likely to cause, and did cause, dependence and addiction, such as prescribing early refills;

    (d)  failing to require, or ignoring the results of, drug tests; and

    (e)  failing to change his prescribing practices, notwithstanding obvious signs of drug abuse and diversion, including, but not limited to, physical signs of abuse and diversion, requests for early refills, failed drug tests, violations of pain management agreements, and warnings of patient controlled substance abuse and diversion by other professionals, friends, and family members.

    14. Defendant LAFAYETTE JAMES TWYNER, JR., was aware that the above-referenced prescription drug problem included people with characteristics that made up his population of patients.  He also knew that the most common alleged pain used by drug-seekers is back pain. Defendant LAFAYETTE JAMES TWYNER, JR., estimated that almost half of his patients come to his office seeking an opiate.

    15. Defendant LAFAYETTE JAMES TWYNER, JR., has estimated that 10 to 20 percent of people on pain medication are drug seekers, with half diverting the drugs.  He has known that it is difficult to determine which patients are illegally using drugs based on physical appearance.

16. Defendant LAFAYETTE JAMES TWYNER, JR., is familiar with the different warning signs or "red flags" used by drug-seekers to obtain controlled substances, such as patients claiming to have lost their pain medication, or needing early refills.

17. Defendant LAFAYETTE JAMES TWYNER, JR., has been aware of different methods to address prescription drug abuse by patients, including using diagnostic testing to determine if the claimed pain is legitimate, referring patients to physical therapy, using drug testing, and utilizing pain management agreements.

18. Defendant LAFAYETTE JAMES TWYNER, JR., was aware of his reputation in the community for being the place to go to acquire prescription pain drugs.

19. Defendant LAFAYETTE JAMES TWYNER, JR., knew that people were taking advantage of him, and that he could be perceived as being part of the prescription drug-abuse problem in Newton, Iowa.

20. Defendant LAFAYETTE JAMES TWYNER, JR., was aware that the aforementioned drug-seeking patients attempt to acquire prescription pain medications, including Hydrocodone and Oxycodone. He was aware that drug-seeking patients try to inject Oxycodone, which is one reason he commonly prescribed Hydrocodone for pain, because the additional ingredient in it, Acetaminophen/Tylenol, is not as commonly injected.

21. Defendant LAFAYETTE JAMES TWYNER, JR., has acknowledged that he is not a pain expert.

**THE GRAND JURY FURTHER CHARGES:**

## COUNTS 1 - 15

### (ILLEGAL DISTRIBUTION/DISPENSING OF CONTROLLED SUBSTANCES)

22. The Grand Jury incorporates paragraphs 1 through 21 herein.

23. Defendant LAFAYETTE JAMES TWYNER, JR., distributed and dispensed controlled substances outside the scope of professional practice and not for a legitimate medical purpose, to patient CA, based on, but not limited to, the following facts:

a. Patient CA was seeking drugs, not medical care, from the defendant from the time of his initial appointment, where he told defendant LAFAYETTE JAMES TWYNER, JR., he had back pain;

b. Defendant LAFAYETTE JAMES TWYNER, JR., conducted no physical exam of CA at the initial doctor appointment and did not require CA to complete a preventative medicine questionnaire, and never required diagnostic testing, but prescribed controlled substances, namely pain medication, to CA;

c. Defendant LAFAYETTE JAMES TWYNER, JR., did not obtain a signed controlled substances agreement from CA until February 2011, years after he started dispensing controlled substances to CA;

d. Patient CA told Defendant LAFAYETTE JAMES TWYNER, JR., at least once, in approximately 2005 or 2006 that he was addicted to pain pills, but the defendant continued to prescribe controlled substances to CA thereafter;

e. Defendant LAFAYETTE JAMES TWYNER, JR., was warned in the Fall of 2010 that CA's pattern of pharmacy use could relate to illicit drug use, but he continued to prescribe controlled substances to CA;

f. Defendant LAFAYETTE JAMES TWYNER, JR., prescribed a Schedule II controlled substance (Nucynta) to CA on June 7, 2010, but when CA complained about it, gave CA a new prescription for Schedule II drugs on June 12, 2010, without requiring a return of the earlier prescribed controlled substance, thereby leaving CA with controlled substances for which he had no legitimate medical purpose;

g. Defendant LAFAYETTE JAMES TWYNER, JR., switched prescriptions to CA between Hydrocodone and Oxycodone, which makes little to no medical sense.

24. On or about the dates listed below, defendant LAFAYETTE JAMES TWYNER, JR., in the Southern District of Iowa and elsewhere, did knowingly and intentionally distribute and dispense, and cause to be distributed and dispensed, the following controlled substances, to CA, which were not for a legitimate medical purpose and outside the bounds of professional medical practice, in violation of Title 21, United States Code, Section 841(a)(1):

| Count | Approximate Date | Controlled Substance | Strength and Quantity | Schedule |
|-------|------------------|----------------------|-----------------------|----------|
| 1 | June 12, 2010 | Endocet | 10mg/325mg 120 pills/tablets | II |
| 2 | July 2, 2010 | Endocet | 10mg/325mg 120 pills/tablets | II |
| 3 | July 22, 2010 | Endocet | 10mg/325mg 120 pills/tablets | II |
| 4 | August 8, 2010 | Hydrocodone/APAP | 10mg/325mg 100 pills/tablets | III |
| 5 | August 21, 2010 | Endocet | 10mg/325mg 120 pills/tablets | II |
| 6 | September 9, 2010 | Hydrocodone/APAP | 10mg/325mg 50 pills/tablets | III |
| 7 | September 16, 2010 | Percocet | 10mg/325mg 180 pills/tablets | II |
| 8 | October 6, 2010 | Vicodin (Hydrocodone/APAP) | 10mg/325mg 50 pills/tablets | III |
| 9 | October 8, 2010 | Oxycodone | 15mg 120 pills/tablets | II |
| 10 | October 25, 2010 | Endocet | 10mg/325mg 120 pills/tablets | II |
| 11 | November 9, 2010 | Percocet (Oxycodone/APAP) | 10mg/325mg 180 pills/tablets | II |

| Count | Approximate Date | Controlled Substance | Strength and Quantity | Schedule |
|-------|------------------|---------------------|----------------------|----------|
| 12 | November 30, 2010 | Oxycodone/APAP | 10mg/325mg 180 pills/tablets | II |
| 13 | December 23, 2010 | Percocet (Endocet) | 10mg/325mg 180 pills/tablets | II |
| 14 | January 5, 2011 | Hydrocodone/APAP | 10mg/325mg 100 pills/tablets | III |
| 15 | February 3, 2011 | Percocet (Oxycodone/APAP) | 10mg/325mg 180 pills/tablets | II |

This is in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) (Schedule II controlled substances) and 841(b)(1)(E) (Schedule III controlled substances).

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 16
### (HEALTH CARE FRAUD- SHASTA HEALTH INSURANCE SERVICES, INC.)

25. The Grand Jury incorporates paragraphs 1 through 24 herein.

26. On or between approximately June 12, 2010, through approximately February 23, 2011, in the Southern District of Iowa and elsewhere, Defendant LAFAYETTE JAMES TWYNER, JR., did knowingly and willfully execute, and attempt to execute, a scheme or artifice to defraud a health care benefit program, namely Shasta Health Insurance Services, Inc. in connection with the delivery of or payment for health care benefits, items, and services, by submitting, and causing others to submit, false and fraudulent claims for prescriptions represented to have been in the usual course of medical practice and for a legitimate medical purpose, which were not.

All in violation of Title 18, United States Code, Sections 1347 and 2.

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 17
## (ILLEGAL DISTRIBUTION/DISPENSING OF A CONTROLLED SUBSTANCE)

27.  The Grand Jury incorporates paragraphs 1 through 21 herein.

28.  Defendant LAFAYETTE JAMES TWYNER, JR., distributed and dispensed controlled substances outside the scope of professional practice and not for a legitimate medical purpose, to patient TD, based on, but not limited to, the following facts:

a.  TD sought out the defendant because he wanted a "quick fix" for pain related to some back issues;

b.  Prior to prescribing Hydrocodone for TD in 2010 for alleged back pain, defendant LAFAYETTE JAMES TWYNER, JR., reviewed an MRI from another doctor obtained in 2008, and conducted no new tests;

c.  Defendant LAFAYETTE JAMES TWYNER, JR., never discussed a treatment plan with TD;

d.  Patient TD told the defendant he concerned with being addicted, and defendant LAFAYETTE JAMES TWYNER, JR., continued to prescribe it to him, without discussing or addressing potential medical problems related to information provided by the patient;

e.  Defendant LAFAYETTE JAMES TWYNER, JR., did not obtain a controlled substance agreement from TD;

f.  Defendant LAFAYETTE JAMES TWYNER, JR., did not order laboratory work to monitor TD's hepatorenal (kidney) function;

g.  Defendant LAFAYETTE JAMES TWYNER, JR., did not order an imaging analysis to assess or monitor TD's condition;

h.  Defendant LAFAYETTE JAMES TWYNER, JR., did not order a urine drug screen to monitor or assess TD's use of licit and illicit controlled substances.

29.  On or about the date listed below, defendant LAFAYETTE JAMES TWYNER, JR., in the Southern District of Iowa and elsewhere, did knowingly and intentionally distribute and dispense,

and cause to be distributed and dispensed, the following controlled substances, to TD, which were

not for a legitimate medical purpose and outside the bounds of professional medical practice, in

violation of Title 21, United States Code, Section 841(a)(1):

| Count | Approximate Date | Controlled Substance | Strength and Quantity | Schedule |
|-------|------------------|----------------------|-----------------------|----------|
| 17 | March 22, 2010 | Hydrocodone/APAP | 10mg/325mg 120 pill/tablets | III |

This is in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(E)

(Schedule III controlled substance).

**THE GRAND JURY FURTHER CHARGES:**

### COUNTS 18 - 47
### (ILLEGAL DISTRIBUTION/DISPENSING OF CONTROLLED SUBSTANCES)

30. The Grand Jury incorporates paragraphs 1 through 21, and 27 through 29, herein.

31. Defendant LAFAYETTE JAMES TWYNER, JR., distributed and dispensed controlled

substances outside the scope of professional practice and not for a legitimate medical purpose, to

patient SY, based on, but not limited to, the following facts:

a. Defendant LAFAYETTE JAMES TWYNER, JR., escalated his pharmacological treatment of SY in four months to Hydrocodone with no diagnostic testing or imaging;

b. Defendant LAFAYETTE JAMES TWYNER, JR., ignored signs of drug abuse when SY tested positive for methamphetamine and amphetamines, and ignored signs of drug diversion, namely when SY tested negative for medication that had been prescribed to her, such as Hydrocodone and Xanax, and continued to prescribe controlled substances to her thereafter;

c. Defendant LAFAYETTE JAMES TWYNER, JR., did not enforce the "Pain Treatment Agreement" with SY dated 5/27/09.

32. On or about the dates listed below, defendant LAFAYETTE JAMES TWYNER, JR.,

in the Southern District of Iowa and elsewhere, did knowingly and intentionally distribute and dispense, and cause to be distributed and dispensed, the following controlled substances, to SY, which were not for a legitimate medical purpose and outside the bounds of professional medical practice, in violation of Title 21, United States Code, Section 841(a)(1):

| Count | Approximate Date | Controlled Substance | Strength and Quantity | Schedule |
|---|---|---|---|---|
| 18 | September 1, 2009 | Xodol | 10mg/300mg 100 pills/tablets | III |
| 19 | September 15, 2009 | Hydrocodone/APAP | 10mg/325mg 100 pills/tablets | III |
| 20 | October 9, 2009 | Hydrocodone/APAP | 10mg/500mg 100 pills/tablets | III |
| 21 | November 13, 2009 | Hydrocodone/APAP | 10mg/500mg 100 pills/tablets | III |
| 22 | December 8, 2009 | Hydrocodone/APAP | 10mg/325mg 100 pills/tablets | III |
| 23 | December 26, 2009 | Hydrocodone/APAP | 10mg/500mg 100 pills/tablets | III |
| 24 | January 22, 2010 | Hydrocodone/APAP | 10mg/500mg 100pills/tablets | III |
| 25 | February 8, 2010 | Hydrocodone/APAP | 10mg/325mg 100 pills/tablets | III |
| 26 | February 26, 2010 | Hydrocodone/APAP | 10mg/500mg 100 pills/tablets | III |
| 27 | March 10, 2010 | Hydrocodone/APAP | 10mg/325mg 100 pills/tablets | III |
| 28 | March 29, 2010 | Hydrocodone/APAP | 10mg/325mg 100 pills/tablets | III |
| 29 | April 19, 2010 | Hydrocodone/APAP | 10mg/325mg 100 pills/tablets | III |

| Count | Approximate Date | Controlled Substance | Strength and Quantity | Schedule |
|-------|------------------|---------------------|----------------------|----------|
| 30 | May 3, 2010 | Hydrocodone/APAP | 10mg/500mg 120 pills/tablets | III |
| 31 | May 28, 2010 | Hydrocodone/APAP | 10mg/325mg 100 pills/tablets | III |
| 32 | July 12, 2010 | Hydrocodone/APAP | 10mg/325mg 120 pills/tablets | III |
| 33 | August 6, 2010 | Hydrocodone/APAP | 10mg/325mg 120 pills/tablets | III |
| 34 | August 24, 2010 | Hydrocodone/APAP | 10mg/500mg 120 pills/tablets | III |
| 35 | September 8, 2010 | Hydrocodone/APAP | 10mg/325mg 120 pills/tablets | III |
| 36 | September 20, 2010 | Hydrocodone/APAP | 10mg/325mg 120 pills/tablets | III |
| 37 | September 28, 2010 | Hydrocodone/APAP | 10mg/325mg 120 pills/tablets | III |
| 38 | October 18, 2010 | Hydrocodone/APAP | 10mg/500mg 120 pills/tablets | III |
| 39 | November 3, 2010 | Hydrocodone/APAP | 10mg/325mg 120 pills/tablets | III |
| 40 | November 22, 2010 | Hydrocodone/APAP | 10mg/500mg 120 pills/tablets | III |
| 41 | December 13, 2010 | Hydrocodone/APAP | 10mg/325mg 120 pills/tablets | III |
| 42 | January 10, 2011 | Hydrocodone/APAP | 10mg/325mg 120 pills/tablets | III |
| 43 | January 17, 2011 | Hydrocodone/APAP | 10mg/500mg 120 pills/tablets | III |
| 44 | January 28, 2011 | Hydrocodone/APAP | 10mg/325mg 120 pills/tablets | III |

| Count | Approximate Date | Controlled Substance | Strength and Quantity | Schedule |
|-------|------------------|----------------------|-----------------------|----------|
| 45 | February 11, 2011 | Hydrocodone/APAP | 10mg/325mg 120 pills/tablets | III |
| 46 | March 16, 2011 | Hydrocodone/APAP | 10mg/325mg 120 pills/tablets | III |
| 47 | April 6, 2011 | Hydrocodone/APAP | 10mg/500mg 120 pills/tablets | III |

This is in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(E) (Schedule III controlled substance).

**THE GRAND JURY FURTHER CHARGES:**

### COUNT 48
### (HEALTH CARE FRAUD- MEDICAID)

33. The Grand Jury incorporates paragraphs 1 through 21, and 30 through 32, herein.

34. On or between approximately September 1, 2009, and April 6, 2011, in the Southern District of Iowa and elsewhere, defendant LAFAYETTE JAMES TWYNER, JR., did knowingly and willfully execute, and attempt to execute, a scheme or artifice to defraud a health care benefit program, namely Medicaid, in connection with the delivery of or payment for health care benefits, items, and services, by submitting, and causing others to submit, false and fraudulent claims for prescriptions and services represented to have been in the usual course of medical practice and for a legitimate medical purpose, which were not.

All in violation of Title 18, United States Code, Sections 1347 and 2.

**THE GRAND JURY FURTHER CHARGES:**

**COUNTS 49 - 54**
**(ILLEGAL DISTRIBUTION/DISPENSING OF CONTROLLED SUBSTANCES)**

35.  The Grand Jury incorporates paragraphs 1 through 21 herein.

36.  Defendant LAFAYETTE JAMES TWYNER, JR., distributed and dispensed controlled substances outside the scope of professional practice and not for a legitimate medical purpose, to patient ML, based on, but not limited to, the following facts:

a.  On or about October 23, 2007, patients records of Urgent Care indicated that ML was to receive "No narcotics," based on red flags and warning signs for her misuse of drugs, and defendant LAFAYETTE JAMES TWYNER, JR., thereafter ignored these signs, and prescribed ML Hydrocodone and Oxycodone, for the next several years.

37.  On or about the dates listed below, defendant LAFAYETTE JAMES TWYNER, JR., in the Southern District of Iowa and elsewhere, did knowingly and intentionally distribute and dispense, and cause to be distributed and dispensed, the following controlled substances, to ML, which were not for a legitimate medical purpose and outside the bounds of professional medical practice, in violation of Title 21, United States Code, Section 841(a)(1):

| Count | Approximate Date | Controlled Substance | Strength and Quantity | Schedule |
|-------|------------------|----------------------|-----------------------|----------|
| 49 | December 27, 2007 | Hydrocodone/APAP | 5mg/500mg<br>20 pills/tablets | III |
| 50 | September 2, 2008 | Hydrocodone/APAP | 10mg/325mg<br>180 pills/tablets | III |
| 51 | September 12, 2008 | Hydrocodone/APAP | 10mg/325mg<br>100 pills/tablets | III |
| 52 | September 18, 2008 | Xodol | 10mg/300mg<br>100 | III |
| 53 | September 24, 2008 | Hydrocodone/APAP | 10mg/325mg<br>150 pills/tablets | III |

| 54 | September 29, 2008 | Percocet | 10mg/325mg<br>100 pills/tablets | II |

This is in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) (Schedule II controlled substances) and 841(b)(1)(E) (Schedule III controlled substance).

**THE GRAND JURY FURTHER CHARGES:**

**COUNT 55**
**(HEALTH CARE FRAUD- Medicare and Medicaid)**

38. The Grand Jury incorporates paragraphs 1 through 21 and 35 through 37 herein.

39. On or between approximately December 18, 2007, through approximately March 3, 2010, in the Southern District of Iowa and elsewhere, Defendant LAFAYETTE JAMES TWYNER, JR., did knowingly and willfully execute, and attempt to execute, a scheme or artifice to defraud a health care benefit program, namely Medicare and Medicaid, respectively, in connection with the delivery of or payment for health care benefits, items, and services, by submitting, and causing others to submit, false and fraudulent claims for prescriptions and services represented to have been in the usual course of medical practice and for a legitimate medical purpose, which were not.

All in violation of Title 18, United States Code, Sections 1347 and 2.

**THE GRAND JURY FURTHER CHARGES:**

**COUNTS 56 - 61**
**(ILLEGAL DISTRIBUTION/DISPENSING OF CONTROLLED SUBSTANCES)**

40. The Grand Jury incorporates paragraphs 1 through 21 herein.

41. Defendant LAFAYETTE JAMES TWYNER, JR., distributed and dispensed controlled substances outside the scope of professional practice and not for a legitimate medical purpose, to patient MH, based on, but not limited to, the following facts:

a. Defendant LAFAYETTE JAMES TWYNER, JR.'s medical records for MH contained a discharge summary in November 2007 from the University of Iowa Hospitals and Clinics that established MH's history of illegal drug use, namely LSD, cocaine, and others she couldn't remember;

b. Defendant LAFAYETTE JAMES TWYNER, JR., was informed by Skiff Medical Center in February 2008 that patient MH had a history of street drug use;

c. Defendant LAFAYETTE JAMES TWYNER, JR., received a letter in June 2008, informing him that MH keeps lying to him about her controlled substances being lost or stolen, that she was using street drugs, "pot," and "shooting meth," noting that she had obvious bruising on her arms in the past, but was then shooting in less obvious spots, and informing him that she was selling, not taking, her prescribed medications;

d. On or about March 10, 2009, Defendant LAFAYETTE JAMES TWYNER, JR., was informed by the Jasper County Jail that MH had been caught actually diverting drugs prescribed for her;

e. Defendant LAFAYETTE JAMES TWYNER, JR., received a drug test for MH in August 2009, which informed him she was taking non-prescribed benzodiazepine medication;

f. Defendant LAFAYETTE JAMES TWYNER, JR., was told in December 2009 that MH had tested positive for benzodiazepines, and other drug test results, by Mercy Clinical Laboratory;

g. Defendant LAFAYETTE JAMES TWYNER, JR., was told by a physician assistant at Poweshiek County Mental Health Center on March 12, 2010, of concerns MH was abusing oxycodone, and reportedly misusing medication and giving them to others;

h. Defendant LAFAYETTE JAMES TWYNER, JR., received a drug test for MH in April 2010, which showed MH was not taking her medications as prescribed;

i. Notwithstanding the foregoing "red flags" or "warning signs," Defendant LAFAYETTE JAMES TWYNER, JR., continued to prescribe controlled substances to MH on a monthly basis.

42. On or about the dates listed below, defendant LAFAYETTE JAMES TWYNER, JR.,

in the Southern District of Iowa and elsewhere, did knowingly and intentionally distribute and

dispense, and cause to be distributed and dispensed, the following controlled substances, to MH,

which were not for a legitimate medical purpose and outside the bounds of professional medical

practice, in violation of Title 21, United States Code, Section 841(a)(1):

| Count | Approximate Date | Controlled Substance | Strength and Quantity | Schedule |
|-------|------------------|----------------------|-----------------------|----------|
| 56 | April 20, 2009 | Percocet (Endocet) | 10mg/325mg 100 pills/tablets | II |
| 57 | May 15, 2009 | Percocet (Endocet) | 10mg/325mg 120 pills/tablets | II |
| 58 | June 13, 2009 | Percocet (Endocet) | 10mg/325mg 120 pills/tablets | II |
| 59 | May 11, 2010 | Percocet (Oxycodone/APAP) | 10mg/325mg 120 pills/tablets | II |
| 60 | June 10, 2010 | Percocet (Oxycodone/APAP) | 10mg/325mg 120 pills/tablets | II |
| 61 | July 9, 2010 | Percocet (Endocet) | 10mg/325mg 120 pills/tablets | II |

This is in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C)

(Schedule II controlled substances).

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 62
### (HEALTH CARE FRAUD- Medicare and Medicaid)

43.  The Grand Jury incorporates paragraphs 1 through 21, and 40 through 42 herein.

44.  On or between approximately April 20, 2009, through approximately March 30, 2011,

in the Southern District of Iowa and elsewhere, Defendant LAFAYETTE JAMES TWYNER, JR.,

did knowingly and willfully execute, and attempt to execute, a scheme or artifice to defraud a health

care benefit program, namely Medicare and Medicaid, respectively, in connection with the delivery

of or payment for health care benefits, items, and services, by submitting, and causing others to

submit, false and fraudulent claims for prescriptions represented to have been in the usual course of

medical practice and for a legitimate medical purpose, which were not.

All in violation of Title 18, United States Code, Sections 1347 and 2.

**THE GRAND JURY FURTHER CHARGES:**

**COUNTS 63 - 65**
**(ILLEGAL DISTRIBUTION/DISPENSING OF CONTROLLED SUBSTANCES)**

45.  The Grand Jury incorporates paragraphs 1 through 21 herein.

46.  Defendant LAFAYETTE JAMES TWYNER, JR., distributed and dispensed controlled substances outside the scope of professional practice and not for a legitimate medical purpose, to patient BH, who was an undercover law enforcement officer, based on, but not limited to, the following facts:

a. Patient BH presented himself to defendant LAFAYETTE JAMES TWYNER, JR., complaining of knee pain, when he, in fact, had no such injury, and was a prescribed a controlled substance, without any diagnostic testing being performed;

b. On or about November 22, 2010, patient BH informed defendant LAFAYETTE JAMES TWYNER, JR., that his knee was better and he was not in much pain, Defendant LAFAYETTE JAMES TWYNER, JR., asked BH is he wanted more Hydrocodone and, nevertheless, continued to prescribe Hydrocodone to BH;

c. On or December 29, 2010, BH told Defendant LAFAYETTE JAMES TWYNER, JR., that his knee was good and not really in pain anymore, Defendant LAFAYETTE JAMES TWYNER, JR. did not perform an exam, talked about sports, and prescribed BH 100 Hydrocodone;

d. On or about January 20, 2011, BH told Defendant LAFAYETTE JAMES TWYNER, JR., his knee was fine, he had no pain, and that the medication helped him get through the day; Defendant LAFAYETTE JAMES TWYNER performed no exam, told BH he did not need and should get off of Hydrocodone,, but nevertheless prescribed 50 Hydrocodone to BH;

e. On or about February 8, 2011, BH told Defendant LAFAYETTE JAMES TWYNER, JR., his knee was fine, but that the pills helped him get through the day; whereafter Defendant LAFAYETTE JAMES TWYNER, JR., prescribed BH 30 Hydrocodone and told him to get off pain mediciation.

47.  On or about the dates listed below, defendant LAFAYETTE JAMES TWYNER, JR.,

Page 19 of 29

in the Southern District of Iowa and elsewhere, did knowingly and intentionally distribute and

dispense, and cause to be distributed and dispensed, the following controlled substances, to BH,

which were not for a legitimate medical purpose and outside the bounds of professional medical

practice, in violation of Title 21, United States Code, Section 841(a)(1):

| Count | Approximate Date | Controlled Substance | Strength and Quantity | Schedule |
|-------|------------------|----------------------|-----------------------|----------|
| 63 | December 29, 2010 | Hydrocodone/APAP | 10mg/325mg 100 pills/tablets | III |
| 64 | January 20, 2011 | Hydrocodone/APAP | 10mg/325mg 50 pills/tablets | III |
| 65 | February 8, 2011 | Hydrocodone/APAP | 10mg/325mg 30 pills/tablets | III |

This is in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(E)

(Schedule III controlled substance).

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 66 - 77
## (ILLEGAL DISTRIBUTION/DISPENSING OF CONTROLLED SUBSTANCES)

48.     The Grand Jury incorporates paragraphs 1 through 21 herein.

49.     Defendant LAFAYETTE JAMES TWYNER, JR., distributed and dispensed

controlled substances outside the scope of professional practice and not for a legitimate medical

purpose, to patient BJ, based on, but not limited to, the following facts:

a. Patient BJ was taking controlled substances in an amount greater than prescribed, and
frequently provided early refills by defendant LAFAYETTE JAMES TWYNER, JR.

50.     On or about the dates listed below, defendant LAFAYETTE JAMES TWYNER, JR.,

in the Southern District of Iowa and elsewhere, did knowingly and intentionally distribute and

dispense, and cause to be distributed and dispensed, the following controlled substances, to BJ, which were not for a legitimate medical purpose and outside the bounds of professional medical practice, in violation of Title 21, United States Code, Section 841(a)(1):

| Count | Approximate Date | Controlled Substance | Strength and Quantity | Schedule |
|---|---|---|---|---|
| 66 | May 21, 2010 | Percocet (Oxycodone/APAP) | 10mg/325mg 100 pills/tablets | II |
| 67 | June 1, 2010 | Oxycontin | 20mg 60 pills/tablets | II |
| 68 | June 7, 2010 | Oxycontin | 80mg 60 pills/tablets | II |
| 69 | June 7, 2010 | Percocet (Oxycodone/APAP) | 10mg/325mg 100 pills/tablets | II |
| 70 | June 12, 2010 | Norco (Hydrocodone/APAP) | 10mg/325mg 50 pills/tablets | II |
| 71 | August 13, 2010 | Opana | 10mg 90 pills/tablets | II |
| 72 | August 13, 2010 | Oxycontin | 80mg 60 pills/tablets | II |
| 73 | September 2, 2010 | Oxycontin | 80mg 90 pills/tablets | II |
| 74 | September 10, 2010 | Opana | 10mg 90 pills/tablets | II |
| 75 | March 7, 2011 | Opana | 20mg 60 pills/tablets | II |
| 76 | March 14, 2011 | Opana | 10mg 50 pills/tablets | II |
| 77 | March 25, 2011 | Opana | 20mg 90 pills/tablets | II |

This is in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) (Schedule II controlled substances).

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 78
## (HEALTH CARE FRAUD- AETNA)

51.     The Grand Jury incorporates paragraphs 1 through 21 and 48 through 50 herein.

52.     On or between approximately June 1, 2010, and March 28, 2011, in the Southern District of Iowa and elsewhere, defendant LAFAYETTE JAMES TWYNER, JR., did knowingly and willfully execute, and attempt to execute, a scheme or artifice to defraud a health care benefit program, namely Aetna, in connection with the delivery of or payment for health care benefits, items, and services, by submitting, and causing others to submit, false and fraudulent claims for prescriptions and related services represented to have been  in the usual course of medical practice and for a legitimate medical purpose, which were not.

All in violation of Title 18, United States Code, Sections 1347 and 2.

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 79 - 89
## (ILLEGAL DISTRIBUTION/DISPENSING OF CONTROLLED SUBSTANCES)

53.     The Grand Jury incorporates paragraphs 1 through 21 herein.

54.     Defendant LAFAYETTE JAMES TWYNER, JR., distributed and dispensed controlled substances outside the scope of professional practice and not for a legitimate medical purpose, to patient TM, based on, but not limited to, the following facts:

a.  Defendant LAFAYETTE JAMES TWYNER, JR., conducted no physical exam and ordered no tests, and only pushed on patient TM's back a few times, during their first visit, which lasted no more two minutes, before sitting back down and writing him a prescription for Tramadol;

b. On the next visit, defendant LAFAYETTE JAMES TWYNER, JR., skipped lower doses of Hydrocodone, and started TM out on 10 milligrams of the controlled substance;

55.    On or about the dates listed below, defendant LAFAYETTE JAMES TWYNER, JR., in the Southern District of Iowa and elsewhere, did knowingly and intentionally distribute and dispense, and cause to be distributed and dispensed, the following controlled substances, to TM, which were not for a legitimate medical purpose and outside the bounds of professional medical practice, in violation of Title 21, United States Code, Section 841(a)(1):

| Count | Approximate Date | Controlled Substance | Strength and Quantity | Schedule |
|-------|------------------|----------------------|-----------------------|----------|
| 79 | August 9, 2010 | Hydrocodone/APAP | 10mg/325mg 50 pills/tablets | III |
| 80 | August 14, 2010 | Percocet (Oxycodone/APAP) | 5mg/325mg 50 pills/tablets | II |
| 81 | August 18, 2010 | Hydrocodone/APAP | 10mg/325mg 50 pills/tablets | III |
| 82 | August 30, 2010 | Percocet (Oxycodone/APAP) | 5mg/325mg 50 pills/tablets | II |
| 83 | October 11, 2010 | Hydrocodone/APAP | 10mg/325mg 50 pills/tablets | III |
| 84 | October 19, 2010 | Percocet (Oxycodone/APAP) | 5mg/325mg 50 pills/tablets | II |
| 85 | October 26, 2010 | Hydrocodone/APAP | 10mg/325mg 50 pills/tablets | III |
| 86 | November 9, 2010 | Hydrocodone/APAP | 10mg/325mg 50 pills/tablets | III |
| 87 | November 18, 2010 | Hydrocodone/APAP | 10mg/325mg 50 pills/tablets | III |
| 88 | November 23, 2010 | Hydrocodone/APAP | 10mg/325mg 50 pills/tablets | III |

| 89 | December 6, 2010 | Hydrocodone/APAP | 10mg/325mg 50 pills/tablets | III |
|----|------------------|------------------|------------------------------|-----|

This is in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) (Schedule II controlled substances) and 841(b)(1)(E) (Schedule III controlled substance).

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 90
### (HEALTH CARE FRAUD- Medicaid)

56.    The Grand Jury incorporates paragraphs 1 through 21 and 53 through 55 herein.

57.    On or between approximately August 9, 2010, and February 11, 2011, in the Southern District of Iowa and elsewhere, defendant LAFAYETTE JAMES TWYNER, JR., did knowingly and willfully execute, and attempt to execute, a scheme or artifice to defraud a health care benefit program, namely Medicaid, in connection with the delivery of or payment for health care benefits, items, and services, by submitting, and causing others to submit, false and fraudulent claims for prescriptions and related services represented to have been in the usual course of medical practice and for a legitimate medical purpose, which were not.

All in violation of Title 18, United States Code, Sections 1347 and 2.

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 91 - 92

### (ILLEGAL DISTRIBUTION/DISPENSING OF CONTROLLED SUBSTANCES)

58.    The Grand Jury incorporates paragraphs 1 through 21 herein.

59.    Defendant LAFAYETTE JAMES TWYNER, JR., distributed and dispensed controlled substances outside the scope of professional practice and not for a legitimate medical purpose, to patient KC, based on, but not limited to, the following facts:

Page 24 of  29

a.. On or about October 2, 2009, Defendant LAFAYETTE JAMES TWYNER, JR., knew that patient KC had drug-tested showing suspicion of THC, methamphetamine and Oxycodone, in violation of his June 19, 2009, pain treatment agreement with her, but nevertheless continued to prescribe controlled substances to her;

b. Defendant LAFAYETTE JAMES TWYNER, JR., provided one or more early refills for patient KC, even after knowing the positive drug test and violation of the pain management agreement.

60.     On or about the dates listed below, defendant LAFAYETTE JAMES TWYNER, JR., in the Southern District of Iowa and elsewhere, did knowingly and intentionally distribute and dispense, and cause to be distributed and dispensed, the following controlled substances, to KC, which were not for a legitimate medical purpose and outside the bounds of professional medical practice, in violation of Title 21, United States Code, Section 841(a)(1):

| Count | Approximate Date | Controlled Substance | Strength and Quantity | Schedule |
|-------|------------------|----------------------|-----------------------|----------|
| 91 | October 26, 2009 | Hydrocodone/APAP | 10mg/325mg 50 pills/tablets | III |
| 92 | October 30, 2009 | Hydrocodone/APAP | 10mg/325mg 100 pills/tablets | III |

This is in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(E) (Schedule III controlled substance).

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 93
### (HEALTH CARE FRAUD- Blue Cross/Blue Shield)

61.     The Grand Jury incorporates paragraphs 1 through 21 and 58 through 60 herein.

62.     On or between approximately October 26, 2009, and October 30, 2009, in the Southern District of Iowa and elsewhere, defendant LAFAYETTE JAMES TWYNER, JR., did

knowingly and willfully execute, and attempt to execute, a scheme or artifice to defraud a health care benefit program, namely Blue Cross/Blue Shield, in connection with the delivery of or payment for health care benefits, items, and services, by submitting, and causing others to submit, false and fraudulent claims for prescriptions and related services represented to have been in the usual course of medical practice and for a legitimate medical purpose, which were not.

All in violation of Title 18, United States Code, Sections 1347 and 2.

**THE GRAND JURY FURTHER CHARGES:**

**COUNT 94 - 113**
**(ILLEGAL DISTRIBUTION/DISPENSING OF CONTROLLED SUBSTANCES)**

63.     The Grand Jury incorporates paragraphs 1 through 21 herein.

64.     Defendant LAFAYETTE JAMES TWYNER, JR., distributed and dispensed controlled substances outside the scope of professional practice and not for a legitimate medical purpose, to patient RL, based on, but not limited to, the following facts:

a.   At times, defendant, LAFAYETTE JAMES TWYNER, JR., prescribed controlled substances for patient RL in quantities and frequency that conflicted with the instructions on the prescription label.

b.   The preventive medicine questionnaire in defendant LAFAYETTE JAMES TWYNER, JR.'s patient file disclosed that RL had a history of intravenous ("IV") drug abuse and recreational drug abuse as far back as July 25, 2000;

c.   Defendant LAFAYETTE JAMES TWYNER, JR., was aware that RL requested refills on controlled substance prescriptions after using the "red flag" excuse that his medication had been stolen;

d.   Though patient RL claimed to have back and ankle pain, defendant LAFAYETTE JAMES TWYNER, JR., never referred him to a specialist for diagnostic testing or imaging;

e.   By February 2010, RL estimated he had been injecting opiates daily for a year, but defendant LAFAYETTE JAMES TWYNER, JR., did not conduct physical examinations of RL that would have revealed this;

f. The only treatment plan defendant LAFAYETTE JAMES TWYNER, JR., had for patient RL was to keep him on pain medication;

g. Defendant LAFAYETTE JAMES TWYNER, JR., was aware that patient RL was taking prescribed controlled substances in an amount greater than prescribed, and continued to prescribe them;

h. By at least May 11, 2009, defendant LAFAYETTE JAMES TWYNER, JR., was aware that patient RL was taking ten (10) pain pills a day and wanted off the medication;

i. Defendant LAFAYETTE JAMES TWYNER, JR., conducted a physical of patient RL in February 2009, and did not report that patient RL suffered from chronic back or ankle pain, or any condition that would warrant the long-term dispensing of pain medication to RL;

j. Prior to March 11, 2010, defendant LAFAYETTE JAMES TWYNER, JR., was aware that RL's wife had called his clinic and left a message that RL was abusing drugs, but he nevertheless continued to prescribe controlled substances to RL;

65.     On or about the dates listed below, defendant LAFAYETTE JAMES TWYNER, JR., in the Southern District of Iowa and elsewhere, did knowingly and intentionally distribute and dispense, and cause to be distributed and dispensed, the following controlled substances, to RL, which were not for a legitimate medical purpose and outside the bounds of professional medical practice, in violation of Title 21, United States Code, Section 841(a)(1):

| Count | Approximate Date | Controlled Substance | Strength and Quantity | Schedule |
|-------|------------------|----------------------|-----------------------|----------|
| 94 | February 4, 2009 | Hydrocodone/APAP | 10mg/325mg 100 pills/tablets | III |
| 95 | May 4, 2009 | Hydrocodone/APAP | 10mg/325mg 100 pills/tablets | III |
| 96 | May 11, 2009 | Hydrocodone/APAP | 30 pills/tablets | III |
| 97 | May 19, 2009 | Hydrocodone/APAP | 10mg/325mg 100 pills/tablets | III |

| Count | Approximate Date | Controlled Substance | Strength and Quantity | Schedule |
|---|---|---|---|---|
| 98 | June 9, 2009 | Hydrocodone/APAP | 10mg/325mg 120 pills/tablets | III |
| 99 | June 25, 2009 | Hydrocodone/APAP | 10mg/325mg 120 pills/tablets | III |
| 100 | July 10, 2009 | Hydrocodone/APAP | 10mg/325mg 120 pills/tablets | III |
| 101 | July 27, 2009 | Hydrocodone/APAP | 10mg/325mg 120 pills/tablets | III |
| 102 | August 13, 2009 | Hydrocodone/APAP | 10mg/325mg 120 pills/tablets | III |
| 103 | August 27, 2009 | Hydrocodone/APAP | 10mg/325mg 120 pills/tablets | III |
| 104 | September 14, 2009 | Hydrocodone/APAP | 10mg/325mg 120 pills/tablets | III |
| 105 | October 12, 2009 | Percocet (Endocet) | 10mg/325mg 120 pills/tablets | II |
| 106 | October 22, 2009 | Hydrocodone/APAP | 10mg/325mg 120 pills/tablets | III |
| 107 | November 19, 2009 | Hydrocodone/APAP | 10mg/325mg 120 pills/tablets | III |
| 108 | December 3, 2009 | Hydrocodone/APAP | 10mg/325mg 120 pills/tablets | III |
| 109 | December 10, 2009 | Oxycodone | 15mg 180 pills/tablets | II |
| 110 | December 15, 2009 | Hydrocodone/APAP | 10mg/325mg 120 pills/tablets | III |
| 111 | December 29, 2009 | Hydrocodone/APAP | 10mg/325mg 120 pills/tablets | III |
| 112 | January 12, 2010 | Oxycodone | 15mg (30mg 1/2) 180 pills/tablets | II |

| Count | Approximate Date | Controlled Substance | Strength and Quantity | Schedule |
|-------|------------------|----------------------|-----------------------|----------|
| 113 | February 1, 2010 | Oxycodone | 30mg 1/2 (15 mg) 90 pills/tablets | II |

This is in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C)

(Schedule II controlled substances) and 841(b)(1)(E) (Schedule III controlled substance).

**THE GRAND JURY FURTHER CHARGES:**

**COUNT 114**
**(ILLEGAL DISTRIBUTION/DISPENSING OF A CONTROLLED SUBSTANCE
RESULTING IN DEATH)**

66.     The Grand Jury incorporates paragraphs 1 through 21 and 63 through 65 herein.

67.     On or about March 11, 2010, in the Southern District of Iowa, defendant

LAFAYETTE JAMES TWYNER, JR., did knowingly and intentionally distribute and dispense a

mixture and substance containing Oxycodone, a Schedule II controlled substance, namely 180 15mg

tablets, which resulted in the death of RL.

This is a violation of Title 21, United States Code, Sections 841(a)(1)(1) and 841(b)(1)(C).

**A TRUE BILL.**

                                                    /s/
                                                    FOREPERSON

Nicholas A. Klinefeldt
United States Attorney


By:  /s/ Craig Peyton Gaumer
     Craig Peyton Gaumer
     Assistant United States Attorney